IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Richmond Division



FILED
May 15 2025
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>**A single-family dwelling located at 2311 Briargrove Court, Henrico, Virginia 23238, and any surrounding curtilage, in the Eastern District of Virginia.** | 3:25-sw- 114 |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Christopher Garzon, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent (SA) with the Richmond, Virginia office of the Department of Homeland Security (DHS) Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) and have been employed as a Special Agent since April 2021. I graduated from the Federal Law Enforcement Training Center Criminal Investigator Training Program and the HSI Special Agent Training Academy. Prior to working for HSI, I served as a police officer with the Henrico County Police Division for just under seven years. Additionally, I served as a General Instructor for the Henrico County Police Division and was licensed as such through the Virginia Department of Criminal Justice Services. I have conducted investigations into violations of federal and Virginia law, including – but not limited to – drug violations, weapons violations, offenses against persons, and immigration law violations. During my career as a law enforcement officer, I have had continual training covering different elements of criminal investigations. In this training, I have been provided instruction on search and seizure, evidence collection and handling, handling informants, gang identification, interviews and interrogations, and human trafficking.

2. Throughout my career, I have performed various tasks which include, but are not

limited to: (a) functioning as a case agent, which entails the management of investigations in multiple investigative program areas; (b) conducting research in both open source and law enforcement sensitive databases and applications on individuals suspected to be involved in criminal activity; (c) performing physical surveillance and thereby observing and recording movements of persons suspected of various criminal activities; (d) interviewing witnesses and cooperating individuals, (e) testifying before Grand Juries, (f) writing affidavits in support of federal search and seizure warrants.

3. The facts in this affidavit come from my personal observations and involvement, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search a residence located at 2311 Briargrove Court, Henrico, Virginia 23238 (hereinafter, the "TARGET RESIDENCE"), located within the Eastern District of Virginia and further described in Attachment A, for the things described in Attachment B. Attachments A and B are incorporated herein by reference.

## RELEVANT STATUTORY PROVISIONS

5. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that a violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I), conspiracy to commit alien smuggling, has been committed by Luis Alonso ARGUETA DIAZ and others, both known and unknown.

6. I have probable cause to believe that the TARGET RESIDENCE contains contraband and evidence of a crime, fruits of a crime, and instrumentalities of violations of 8 U.S.C. § 1324(a)(1)(A)(v)(I), conspiracy to commit alien smuggling. I submit this application and affidavit in support of a warrant to search the TARGET RESIDENCE and seize evidence, fruits,

and instrumentalities of the foregoing criminal violations. I request authority to search the entire TARGET RESIDENCE described in Attachment A, where the items specified in Attachment B may be found, and to seize all items listed in Attachment B as contraband, instrumentalities, fruits, and evidence of crime.

## BACKGROUND ON HUMAN SMUGGLING

7. Based on my background, training, and experience, and the experience of other agents known to me, I know that individuals who are involved in human smuggling and trafficking engage in the following techniques, tactics, and procedures:

   a. Keep evidence of smuggling, proceeds of smuggling, records or ledgers of smuggling, electronic storage devices or cellular phones, and other records within their residences or within ready access, and conceal such items from law enforcement authorities;

   b. Maintain large amounts of currency in their residences in order to finance their on-going illegal activities and other businesses, as well as using it for paying bills, acquiring assets, and making other purchases;

   c. Persons involved in smuggling activities conceal, in their residences, materials utilized for harboring, transporting aliens;

   d. Smuggling transaction records, books, account ledgers, payments or notes and other evidence of financial transactions relating to obtaining, transferring and spending substantial sums of money which result from engaging in smuggling activities are often maintained at the residences of these persons;

   e. It is not uncommon for individuals involved in smuggling to retain records, receipts and invoices, which indicate deliveries of drugs and/or undocumented aliens to fellow smugglers. These records would include, but

would not be limited to, electronic storage devices and/or cellular phones.

## PROBABLE CAUSE

8. On May 3, 2025, United States Border Patrol Agents (USBP) encountered Nelis Lilibeth BARDALES-HERNANDEZ – a citizen of Honduras – at approximately 12:08am, near Santa Teresa, New Mexico. The apprehending agents then determined that BARDALES-HERNANDEZ had unlawfully entered the United States from Mexico – at a time and place other than as designated by the Secretary of Homeland Security.

9. On May 4, 2025, HSI SA Beatriz Telles received information from USBP regarding the apprehension of a single, unaccompanied juvenile – BARDALES-HERNANDEZ. SA Telles interviewed BARDALES-HERNANDEZ at a Central Processing Station in El Paso, Texas.

10. BARDALES-HERNANDEZ stated she was headed to Virginia to live with her boyfriend – who she identified as Luis ARGUETA DIAZ. ARGUETA DIAZ is thirty-five (35) years old. BARDALES-HERNANDEZ further stated she met ARGUETA DIAZ through her mother, Binda Yaqueline HERNANDEZ. BARDALES-HERNANDEZ further stated her mother had introduced her to ARGUETA DIAZ and she had been dating him for about one (1) year.

11. BARDALES-HERNANDEZ stated her mother was aware that she was headed to the United States to live with ARGUETA DIAZ. BARDALES-HERNANDEZ stated ARGUETA DIAZ arranged for her trip from Honduras to the United States. The total amount ARGUETA DIAZ was going to pay was $20,000 USD, however, ARGUETA DIAZ had only paid $3,500 USD thus far. The remainder of the amount was to be paid once BARDALES-HERNANDEZ reached her destination in the United States. BARDALES-HERNANDEZ stated that ARGUETA DIAZ lived in Virginia, and he had been in the United States for approximately nineteen (19) years now.

12. SA Telles spoke with ARUGETA DIAZ via phone. ARGUETA DIAZ stated he was aware that BARDALES-HERNANDEZ was enroute to Virginia to live with him. ARGUETA DIAZ

further stated that he wanted to help BARDALES-HERNANDEZ be in a safe place, because he had knowledge of what had happened to her in Honduras. ARGUETA DIAZ wanted to bring BARDALES-HERNANDEZ to Virginia, where she could have her baby and help him take care of his three (3) children. Of note, BARDALES-HERNANDEZ is twenty-four (24) weeks pregnant.

13. ARGUETA DIAZ stated he sent $2,000 USD to Binda Yaqueline HERNANDEZ, in Honduras, for the purpose of smuggling BARDALES-HERNANDEZ to the United States. ARGUETA DIAZ further stated he did not know who HERNANDEZ had made the smuggling arrangements with. ARGUETA DIAZ advised the full payment would be made once BARDALES-HERNANDEZ arrived in Virginia.

14. SA Telles also spoke with Binda Yaqueline HERNANDEZ, who stated she received $2,000 USD from ARGUETA DIAZ to arrange for her daughter to be smuggled into the United States.

15. On May 5, 2025, I and HSI Richmond SA Derek M. Mullins interviewed ARGUETA DIAZ at his residence – 2311 Briargrove Court, Henrico, Virginia 23238. ARGUETA DIAZ was read Miranda, in Spanish, and agreed to speak with me and SA Mullins.

16. ARGUETA DIAZ stated he was family friends with the mother of BARDALES-HERNANDEZ, as they were neighbors when ARGUETA DIAZ was living in Honduras.

17. ARGUETA DIAZ has known BARDALES-HERNANDEZ for four to five (4-5) months. He knew she was pregnant and advised that she was seventeen (17) years old.

18. Two (2) months ago, BARDALES-HERNANDEZ's mother told ARGUETA DIAZ she needed assistance with getting BARDALES-HERNANDEZ out of the country.

19. ARGUETA DIAZ sent $2,000 USD to his mother, in Honduras, so she could pass that money to BARDALES-HERNANDEZ's mother. This was to assist with the smuggling fee for BARDALES-HERNANDEZ to be brought into the United States.

20. ARGUETA DIAZ stated that BARDALES-HERNANDEZ's mother found the smuggler and coordinated things. ARGUETA DIAZ was going to receive a call from the smuggler, once BARDALES-HERNANDEZ had entered the United States, to coordinate her transportation to Virginia. ARGUETA DIAZ did not know when BARDALES-HERNANDEZ would arrive in Virginia.

21. ARGUETA DIAZ advised BARDALES-HERNANDEZ was being brought to Virginia to live with him. BARDALES-HERNANDEZ was going to assist ARGUETA DIAZ in caring for his children, as ARGUETA DIAZ sometimes had difficulty in finding childcare for them. ARGUETA DIAZ stated he had three children in the United States and would bring his fourth child – from Honduras – once BARDALES-HERNANDEZ had arrived. Once BARDALES-HERNANDEZ gave birth, ARGUETA DIAZ was going to assist her with finding a job.

22. Based on ARGUETA DIAZ's statements, I believe that ARGUETA DIAZ was using a phone and possibly other electronic device(s) to arrange for BARDALES-HERNANDEZ to be brought to Virginia to live with him. Furthermore, I believe that ARGUETA DIAZ may possess a receipt or other documentation of the $2,000 that he said he sent to his mother in Honduras to be given to BARDALES-HERNANDEZ's mother for the smuggling fee, as well as documentation of any additional payments. I believe that ARGUETA DIAZ would likely keep these documents and/or device(s) in the TARGET RESIDENCE.

## **CONCLUSION**

23. Based on the foregoing, I submit that there is probable cause to believe the TARGET RESIDENCE at 2311 Briargrove Court, Henrico, Virginia, 23238 contains evidence of the crime of 8 U.S.C. § 1324(a)(1)(A)(v)(I), conspiracy to commit alien smuggling.

24. I respectfully request, therefore, that the Court issue the attached warrant authorizing

the search of the TARGET RESIDENCE described in Attachment A and seizure of the items listed in Attachment B.

Respectfully submitted,

_____
Christopher Garzon
Special Agent
Homeland Security Investigations

Sworn to and subscribed before me this 15th day of May 2025.

_____/s/_____
The Honorable Summer L. Speight
U.S. Magistrate Judge
Eastern District of Virginia

## ATTACHMENT A
*Place to be Searched*

**2311 Briargrove Court, Henrico, Virginia, 23238**, and any surrounding curtilage, within the Eastern District of Virginia, which is described as a two-story home – white in color, with vinyl siding. There are black colored shutters on its front-facing windows. There is a short set of stairs leading to the front entrance door of the home. The front entrance to the home is a green door. There is a black mailbox on the premises with the numbers '2311' on the mailbox post. This search warrant authorizes the search of the TARGET RESIDENCE to include the curtilage, any and all vehicles, outbuildings, storage sheds, safes, and other containers at the TARGET RESIDENCE or on its curtilage.



1

## ATTACHMENT B

*Items to be Seized*

All items constituting evidence and/or instrumentalities of violations of 8 U.S.C. § 1324(a)(1)(A)(v)(I), conspiracy to commit alien smuggling, including, but not limited to the following:

a. Indicia of occupancy, residence, and/or ownership of the premises described herein, including, but not limited to, utility and telephone bills, cancelled envelopes, rental agreements and keys;

b. Immigration and identification documents from the United States or any foreign government;

c. Cellular telephones and any other portable electronic devices, to include tablet computers, with the capability of storing information and wirelessly communicating with other similar devices;

d. Records, including but not limited to, books, ledgers, notes, correspondence, lists, receipts, transportation tickets, credit card statements and receipts, rental receipts, hotel receipts, meal receipts, deposit and investment records, telephone tolls, telegrams, financial transaction records, money orders, and other papers which evidence the obtaining, secreting, transfer and/or concealment of assets;

e. Address and/or telephone books and papers reflecting names, addresses and/or telephone numbers or banking information of co-conspirators and others involved in the transportation, concealment, or harboring of smuggled aliens or involved with the proceeds of such activities;

f. Financial records that are evidence of payments made to alien smugglers or received

1

from smuggled aliens and their sponsors; and

g. United States and/or foreign currency in amounts over $1,000.